**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| TRACY DAY,<br><br>Plaintiff,<br><br>Vs.<br><br>EZRICARE LLC; EZRIRX LLC; GLOBAL PHARMA HEALTHCARE PRIVATE LTD.; and AMAZON.COM, INC.<br><br>Defendants. | Civil Action No.:<br><br>**COMPLAINT**<br>**&**<br>**JURY TRIAL DEMAND** |

## COMPLAINT

Plaintiff, Tracy Day, by and through the undersigned, files this Complaint against Defendants EzriCare LLC, EzriRx LLC, Global Pharma Healthcare Private Ltd., and Amazon.com, Inc. ("Defendants"), and in support states the following:

## NATURE OF THE ACTION

1. This action arises out of Plaintiff's purchase and use of EzriCare Artificial Tears (hereinafter, the "Product") that were designed, manufactured, imported, sold, marketed, labeled, and distributed by Defendants. Defendants manufacture, design, import, advertise, label, distribute, market, and sell several over–the counter pharmaceutical products, including the above-named artificial tears, which contain a

solution of Carboxymethylcellulose Sodium 10 MG in 1 ml. Defendants' artificial tears are adulterated and contaminated with "a rare, extensively drug-resistant strain of Pseudomonas aeruginosa bacteria."[1] The presence of the *Pseudomonas Aeruginosa* bacteria in Defendants' Product is due to Defendants' violation(s) of Current Good Manufacturing Processes (as identified by the Food and Drug Administration), including "lack of appropriate microbial testing, formulation issues (the company manufactures and distributes ophthalmic drugs in multi-use bottles, without an adequate preservative), and lack of proper controls concerning tamper-evident packaging." [2] These violations, along with the presence of this rare and, in some cases, deadly bacteria pose a significant and severe health risk to consumers, such as Plaintiff, who purchased and used Defendants' EzriCare Artificial Tears, Plaintiff suffered significant personal injury due to Defendants' misconduct (as set forth below) and seeks damages, both non-economic and economic, and any other relief this Court deems just and equitable.

2. Plaintiff purchased the Product in the state of Florida through Amazon.com.

3. As a result of Plaintiff's use of EzriCare Artificial Tears, Plaintiff was exposed to the *Pseudomonas Aeruginosa* bacteria and suffered eye/vision/sinus damages—which is permanent.

[1] See FDA warns consumers not to purchase or use EzriCare Artificial Tears due to potential contamination, FOOD & DRUG ADMIN. (Feb. 2, 2023), located at https://www.fda.gov/drugs/drug-safety-and-availability/fda-warns-consumers-not-purchase-or-use-ezricare-artificial-tears-due-potential-contamination.
[2] *Id.*

## JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a), because the amount in controversy exceeds $75,000, and Plaintiff and Defendants are residents of different states.

5. This Court has personal jurisdiction over Defendants because Defendants have sufficient minimum contacts with the State of New Jersey and regularly conducted (and still conduct) business in the State of New Jersey relating to the design, development, testing, packaging, promoting, marketing, distribution, labeling, and/or sale of the product, such that exercising jurisdiction over Defendant would not offend due process or traditional notions of fair play and substantial justice.

6. Defendants' Product was sold either directly or indirectly to members of the general public within the State of New Jersey.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) and (b) (2) and 1391 (c) (2) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, and the Defendants are subject to this Courts' personal jurisdiction. Venue is also proper under 18 U.S.C. § 1965(a) because Defendants transact substantial business in New Jersey.

8. Upon information and belief, at all relevant times, Defendants were present and transacted, solicited, and conducted business in the State of New Jersey through their employees, agents, and/or sales representatives and derived substantial revenue from such business.

9. At all relevant times, Defendants expected or should have expected that their acts and omissions would have consequences within the United States and the State of New Jersey.

## THE PARTIES

### A. Plaintiff

10. Plaintiff, Tracy Day, is a citizen and resident of the State of Florida, and at all times relevant hereto has been a resident of the State of Florida.

11. In or around March of 2022, Plaintiff purchased through Amazon.com EzriCare Artificial Tears which product came in a two-pack, that is, there were two bottles of the eye drops.

12. Plaintiff began using the eye drops in or about April of 2022. She had been using the product from that time until sometime in the fall of 2022 when she began having blurred vision and became sensitive to light.

13. Plaintiff began receiving treatment in October of 2022. The treatment she was receiving was for a possible sinus infection, but the antibiotics did not work. In or about the end of December or the first week of January, a culture was taken.

14. On or about January 17, 2023, Plaintiff was advised by the Florida Department of Health that the culture had been referred to them and that she had an infectious disease.

15. On or about January 18, 2023, plaintiff was advised by the Florida Department of Health, via the CDC, which reached out to her local Government and Health Agency as well as by her Eye, Ear, Nose and Throat Specialist that she had a serious bacterium infection that was very dangerous and that bacteria is called VIM-GES-CRPA/Verona Integron-mediated Metallo-B-Iactamase (VIM) and Guiana-Extended Spectrum-B-Lactamase (GES) – producing carbapenem-resistant (Pseudomonas aeruginosa).

16. Plaintiff was thereafter referred to the Infectious Disease of Sarasota, in Sarasota Florida.

17. On or about January 20, 2023, Plaintiff was advised by the Infectious Disease of Sarasota that the bacteria she had had never been dealt with and that the CDC now had the culture.

18. On or about January 22, 2023, plaintiff learned that the CDC put out a notice concerning the issues with the EzriCare eye drops and for the first time became aware that the serious eye problems that she was having were related to EzriCare Artificial Tear eye drops.

19. On January 23, 2023, plaintiff was admitted to the Sarasota Memorial Hospital where she was put in isolation.

20. Thereafter plaintiff had numerous hospitalizations, numerous surgeries performed, and had to undergo vigorous treatments including pic lines inserted so that she could receive new medications to attempt to combat the bacteria.

21. Plaintiff also had to see various specialists, including a Craniologist and Neurologist.

22. As a result of plaintiff's use of the EzriCare Artificial Tears and the subsequent infection she has sustained severe and permanent injuries and is continuing to seek medical treatment for same.

**B. <u>Defendants</u>**

23. Defendant EzriCare LLC is, and at all times relevant to this action was, a New Jersey Limited Liability Company with its principal place of business located at 1525 Prospect Street, Suite 204, Lakewood, NJ 08701. "EzriCare" is a trademark registered and licensed to Defendant ExriRx LLC with the Serial Number 90629770.

EzriCare LLC markets, advertises, labels, distributes, and sells the EzriCare Artificial Tears product at issue in this litigation.

24. Defendant EzriRx LLC is, and at all times relevant to this action was, a company incorporated under the laws of Delaware with its principal place of business located at 1525 Prospect Street, Suite 204, Lakewood, New Jersey 08701. EzriRx LLC markets, advertises, labels, distributes, and sells the EzriCare Artificial Tears product at issue in this litigation.

25. Defendant Global Pharma Healthcare Private Limited is, and at all times relevant to this action was, a foreign corporation organized and existing under the laws of the Country of India, with its principal place of business located at No. 2A, 3rd F., 4th Street, Ganga Nagar, Chennai – 600 024, Tamilnadu, India. Global Pharma Healthcare Private Ltd. Manufactures, designs, tests, markets, advertises, labels, distributes, and sells the EzriCare Artificial Tears product at issue in this litigation.

26. Defendant Amazon.com, Inc. is, and at all relevant times was, a Delaware Corporation with its principal place of business located at 410 Terry Avenue, North, Seattle WA 98109. Amazon.com, Inc. markets, advertises, labels, distributes, and sells the EzriCare Artificial Tears product at issue in this litigation.

27. Prior to the date that Plaintiff used the Product, defendants possessed technical, medical, and/or scientific data from which Defendants knew or should have known through the exercise of reasonable diligence that the EzriCare Artificial Tears were contaminated with a dangerous and deadly bacteria and, thus, were hazardous to the life, health, and safety of persons who were exposed to them—*i.e.*, intended consumer of said product.

28. At all times relevant to this litigation, Defendants did business in New Jersey as manufacturers, distributors, packagers, marketers, suppliers, and/or seller of the EzriCare Artificial Tears product at issue in this litigation.

29. At all pertinent times, Defendants were engaged in the research, development, manufacture, design, testing, packaging, labeling, sale, and marketing of the EzriCare Artificial Tears and introduced such products into interstate commerce with knowledge and intent that such products be sold in the State of New Jersey.

30. At all times material hereto, Defendants developed, tested, assembled, manufactured, packaged, labeled, prepared, distributed, marketed, supplied, and/or sold the EzriCare Artificial Tears product.

31. Defendants placed the defective and contaminated EzriCare Artificial Tears product into the stream of interstate commerce which was used by the Plaintiff from approximately April of 2022 to the fall of 2022 when Plaintiff stopped using the Product.

32. Plaintiff did not discover and could not have discovered through the exercise of reasonable care the existence of the claims pursued upon herein until on or about January 22, 2023, when the CDC issued its report concerning issues with the EzriCare Artificial Tears.

## **FACTUAL ALLEGATIONS**

EzriCare Artificial Tears

33. The NDC number for EzriCare Artificial Tears is 79503-101-15.

34. EzriCare LLC began packaging, labeling, advertising, marketing, and selling these artificial tears on or about November 22, 2020.

35. EzriCare Artificial Tears are intended to be used in the following manner: (1) as a protectant against further irritations of the eye, or to exposure to wind or sun, or to relieve dryness of the eye.[3]

36. These artificial tears are "preservative free," which removes any chemical used to prevent the growth of bacteria in the product. [4]

37. These artificial tears are also contained in a "multi-use" bottle that is meant to be re-used. However, because product/container is preservative-free, this could create a perfect storm for bacterial growth in the bottle/container.[5]

***Pseudomonas Aeruginosa defined***

38. The *Pseudomonas Aeruginosa* bacteria is not a new bacteria, but it is notorious for being "versatile" and "innately drug resistant." [6] It is most frequently found in the environment, such as within the soil and/or freshwater.

39. The *Pseudomonas Aeruginosa* bacteria is also known to infect humans, and it can cause serious skin, eye, lung, and other infections throughout the body.

40. Currently, it is estimated that the *Pseudomonas Aeruginosa* bacteria is resistant to the following antibiotics: Cefepime, ceftazidime, piperacillin-tazobactam,

---

[3] See EzriCare Artificial Tears Product Monograph, located at https://dailymed.njm.nih.gov/dailymed/fda/DrugXsl.cfm? Setid=ac1ea23c-flc6-418f-921e-58553ee919cb&type-display.

[4] *See Outbreak of Extensively Drug-resistant Pseudomonas Aeruginosa Associated with Artificial Tears*, CDCHealth ALERT NETWORK, located at Https://emergency.cdc.gov/han/2023/han00485.asp?ACSTrackingID=USCDC_511-DM98842&ACSTrackingLabel=HAN%20485%20General%20Publi&deliveryName=USCDC_511-DM98842.

[5] *Amanda Holpuch, Eye Drops Are Recalled After Being Linked to Vision Loss and 1 Death* N.Y. Times (2/2/2023), located at https://www.nytimes.com/2023/02/02/business/eye-drops-ezricare-infections-cdc.html (article quoting Dr.Thomas L. Steinemann, an ophthalmologist at MetroHealth Medical Center in Cleveland, and a spokesperson for the American Academy of Opthalmology).

[6] *Beth Mole, Extremely drug-resistant germ found in eye drops infects 55 in 12 states; 1 dead*, ARS TECHNICA (Feb.2, 2023), located at https://arstechnica.com/science/2023/02 extremely-drug-resistent-germ-found-in-eye-drops-infects-55-in-12-states-1-dead/.

aztreonam, carbapenems, ceftazidime-avibactam, ceftolozane-tazobactam, fluoroquinolones, polymyxins, amikacin, gentamicin, and tobramycin. [7]

41. But, new therapies—known as "phage" therapies—may be utilized to treat antibiotic-resistant bacteria, like the *Pseudomonas Aeruginosa.* These therapies "work by deploying viruses that aim to attack bacteria, fending off infections that traditional antibiotic drugs fail to stamp out." [8]

*Pseudomonas Aeruginosa* and EzriCare Artificial Tears

42. The CDC in its investigation, has isolated the specific strain of *Pseudomonas Aeruginosa* and identified it as Verona Integron-mediated Metallo-B-lactamase (VIM) and Guiana-Extended Spectrum-B-Lactamase (GES)-producing carbapenem-resistant Pseudomonas aeruginosa ("VIM-GES-CPRA".) That particular strand is incredibly drug-resistant and dangerous.

43. Prior to this outbreak, the CDC reported that this particular strain of *Pseudomonas Aeruginosa* "had never been reported in the United States")[9].

44. The CDC reported that its "laboratory testing identified the presence of the outbreak strain in opened EzriCare bottles with different lot numbers collected from two states"[10]

---

[7] Beth Mole, *Extremely drug-resistant germ found in eye drops infects in 12 states, 1 dead,* ARS TECHNICA (Feb.2, 2023), located at https://arstechnica.com/science/2023/02/extremely -drug-resistant-germ-found-in-eye-drops-infects-55-in-12-states-1-dead/,

[8] Alexander Tin, *Death toll climbs in outbreak linked to recalled eye drops as new treatment identified,* CBS NEWS(March 21, 2023 5:59pm), located at https://www.cbsnews.com/news/eye-drop-recall-death-toll-pseudonomas-aeruginosa-new-treatment.

[9] OUTBREAK OF EXTENSIVELY DRUG-RESISTANT PSEUDOMONAS AERUGINOSA ASSOCIATED WITH ARTIFICIAL TEARS, CENTERS FOR DISEASE CONTROL & PREVENTION (updated March 23, 2023)

[10] See Outbreak of Extensively Drug-resistant Pseudomonas aeruginosa Associated with Artificial Tears, CDC Health Alert Network, located at https://emergency.cdc.gov/han00485

45. The CDC also reported that it was able to isolate the outbreak strain from 15 sputum or bronchial washes, 17 cornea swabs, 10 urine samples, two blood samples, 26 rectal swabs and 4 other nonsterile sources. [11]

*Product Recall*

46. On January 23, 2023, Defendant EzriCarr LLC first issued a statement on the contamination of the Product, stating; "EzriCare became aware in the last few days that the Center for Disease Control (CDC) is conducting an ongoing investigation related to adverse events implicating various Over the Counter (OTC) eye drops."

47. On February 1, 2023, Defendant Global Pharma Healthcare Private Ltd. Initiated a voluntary recall of all unexpired lots of EzriCare Artificial Tears.

48. On February 2, 2023, the U.S. Food and Drug Administration ("FDA") issued a statement "warning consumers and health care practitioners not to purchase and to stop using EzriCare [12] Artificial Tears or Delsam Pharma's Artificial Tears due to bacterial contamination".[13] The FDA highlighted that it recommend Defendant Global Pharma to initiate a product recall due to "failure to comply with Current Good Manufacturing Practice", violations, including lack of appropriate microbial testing, formulation issues (the company manufactures and distributes ophthalmic drugs in multi-use bottles, without an adequate preservative), lack of proper controls concerning tamper-evidence packaging.

---

[11] OUTBREAK OF EXTENSIVELY DRUG-RESISTANT PSEUDOMONAS AERUGINOSA ASSOCIATED WITH ARTIFICIAL TEARS, CENTERS FOR DISEASE CONTROL & PREVENTION (updated March 21, 2023), located at https://www.cdc.gov/hai/outbreak/ccrpa-artificial-tears.html.

[12] FDA warns consumers not to purchase or use EzriCare Artificial Tears due to potential contaminations, FOOD & DRUG ADMIN. (Feb.2, 2023), located at https://www.fda.gov/drugs/drug-safety-and-availability/fda-warns-consumers-not-purchase-or-use-ezricare-artificial-tears-due-potential-contamination.

[13] *Id.*

49. The FDA also "placed [Defendant] Global Pharma Healthcare Private Limited on import alert. . . for providing an inadequate response to a records request and for not complying with C.G.M.P. requirements." According to FDA, the import alert "prevents these products from entering the United States." [14]

**COUNT ONE**

**Violation of the New Jersey Products Liability Act,**

**N.J.S. § 2A:5C-1 et seq.**

**Strict Liability for Design and Manufacturing Defects**

**(Against all Defendants)**

50. Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

51. Plaintiff brings a product liability action against Defendants, as that term is defined under N.J.S. § 2A:58C-1(3).

52. Defendant EzriCare LLC is a product manufacturer/seller, as that term is defined under N.J.S. § 2A:5C-8, because it, in the course of business, "sells; distributes; leases; installs; prepares or assembles a manufacturer's product according to the manufacturer's plan, intention, design, specifications or formulations; blends; packages; labels; markets; repairs; maintains or otherwise is involved in placing a product in the line of commerce." N.J.S. § 2A:58C-8.

53. Defendant EzriRx LLC is a product manufacturer/seller, as that term is defined under N.J.S. § 2A:5C-8, because it, in the course of business, "sells; distributes;

[14] *Id.*

leases; installs; prepares or assembles a manufacturer's product according to the manufacturer's plan, intention, design, specifications or formulations; blends; packages; labels; markets; repairs; maintains or otherwise is involved in placing a product in the line of commerce." N.J.S. § 2A:58C-8.

54. Defendant Global Pharma Healthcare Private Limited is considered a manufacturer under N.J.S. § 2A:58C-8 because it (1) designs, formulates, produces, creates, makes, packages, labels or constructs any product or component of a product, (2) is a product seller with respect to a given product to the extent the product seller designs formulates, produces, creates, makes, packages, labels or constructs the product before its sale, and (3) holds itself out as a manufacturer to the user of that product.

55. Defendant Amazon.com, Inc. is a product seller/distributor, as that term is defined under N.J.S. § 2A:58C-8, because it, in the course of business, "sells; distributes; leases; installs; prepares or assembles a manufacturer's product according to the manufacturer's plan, intention, design, specifications or formulations; blends; packages; labels; markets; repairs; maintains or otherwise is involved in placing a product in the line of commerce." N.J.S. § 2A:58C-8.

56. Defendants, as product manufacturer/seller/distributor, are liable to Plaintiff under the New Jersey Product Liability Act because Ezra Artificial Tears deviated from the design specifications, formulae, or performance standards of the manufacturer, failed to contain adequate warnings or instructions, and was designed in a defective manner. N.J.S. § 2A:58C-2.

57. Defendants EzriCare LLC, EzriRx LLC, Global Pharma Healthcare Private LTD, and Amazon.com, Inc., exercised some significant control over the design, manufacture, packaging, and/or labeling of the Ezra Artificial Tears relative to the alleged defect in the product (i.e., the contamination of the Pseudomonas Aeruginosa bacteria) which caused the injury. N.J.S. § 2A:58C-9(d).

58. Defendant's product EzraCare Artificial Tears were defectively manufactured and designed as a result of substantial defects that occurred during production and while the product was in defendant's control that made the product unsafe for its intended use, and was a substantial factor in causing the injuries that the Plaintiff sustained. These defects existed before the product left the control of the defendants and the product was not misused by the Plaintiff and was used properly for its intended purposes.

59. Further, Ezra Artificial Tears were and are defective in both design and manufacture, as there were, and remain, "a practical and technically feasible alternative design that would have prevented the harm without substantially impairing the reasonably anticipated or intended function of the product. "N.J.S. § 2A:58C-3(a)(1); and the cost of such alternative design was insignificant compared to the seriousness and severity of the harm that could result and did result to Plaintiff. The cost of the alternative design was a cost that the market and consumers could bear, and any potential costs were far outweighed by the known benefits of such alternative design and marketing.

60. Defendants engaged in the design, development, manufacture, marketing, packaging, labeling, sale, and distribution of EzriCare Artificial Tears in a defective and unreasonably dangerous condition to consumers, including Plaintiff.

61. Defendants caused EzriCare Artificial Tears to enter the stream of commerce and to be sold through various retailers where Plaintiff purchased the EzriCare Artificial Tears.

62. Defendants defectively manufactured and designed the product in that they allowed the product to be manufactured packaged and designed in such a way that it allowed pseudomonas aeruginosa bacteria to be in, or grow, or develop in the bottles and packaging of the product. EzriCare Artificial Tears was defective as a result of numerous flaws in the manufacturing and design process, which included but is not limited to numerous sterilization failures; inadequate filtration system and air-flow system in the manufacturing plants to protect bacterial growth; lack of adequate preservatives, and lack of appropriate microbial testing.

63. As a direct and proximal result of the manufacturing and design defect as set forth and the defendant's failure to properly design EzriCare Artificial Tears, plaintiff was injured catastrophically and was caused severe pain, suffering, disability, and paramount loss of enjoyment of life, loss of care and comfort, and economic damages for which defendants are strictly liable in tort.

64. Defendants should have known that the EzriCare Artificial Tears were unreasonably dangerous but continued to design and manufacture same so as to maximize sales and profits at the expense of public health and safety, in conscience disregard for the foreseeable harm to consumers.

65. Defendants had a duty to comply with the Federal Food, Drug and Cosmetic Act, and all of the rules, regulations and policies promulgated to it. Defendants did not

comply with these duties in manufacturing, packaging, labeling, importing, selling, supplying, distributing, advertising, and/or marketing into interstate commerce of the artificial tears contaminated with Pseudomonas aeruginosa to which plaintiff was exposed.

66. In particular, the artificial tears that defendants manufactured, packaged, labeled, imported, sold, supplied, distributed, advertised, and/or marketed were adulterated and contaminated under 21 U.S.C. 301, et seq., the Federal Food, Drug, and Cosmetic Act.

67. Defendants' violations of the Federal Food, Drug, and Cosmetic Act include without limitation: defendants failed to implement and/or utilize adequate, appropriate, and effective preventative controls; failed to verify that preventative controls were consistently implemented and were effectively and significantly minimizing or preventing the hazards; and failed to implement a supply-chain program that assured that a hazard requiring a supply-chain applied control had been significantly minimized or prevented.

68. As a result of Defendants' violations of the New Jersey Products Liability Act, defendants are strictly liable in tort for plaintiff's injuries.

**WHEREFORE**, Plaintiff respectfully requests this Court to enter judgment in Plaintiff's favor against the defendants, jointly, severally, or in the alternative, for compensatory damages, together with interest, costs herein incurred, attorneys' fees and all such other and further relief as this Court deems just and proper.

## COUNT TWO
## Strict Liability (Failure to Warn)
## (Against All Defendants)

69. Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

70. Defendants manufactured, designed, sold, and placed into the stream of commerce the EzriCare Artificial Tears during the course of their business.

71. At all pertinent times, Plaintiff used the EzriCare Artificial Tears in her eyes, which is a reasonably foreseeable use.

72. Defendants knew or should have known that the EzriCare Artificial Tears were adulterated and/or contaminated with a dangerous and deadly bacterium.

73. At all pertinent times, including the time(s) of sale and use, the EzriCare Artificial Tears when put to the aforementioned reasonably foreseeable use, were in an unreasonably dangerous and defective condition because they failed to contain adequate and proper warnings, and/or instructions regarding the presence of—and dangers of—*Pseudomonas Aeruginosa* bacteria within the bottles and/or packaging of EzriCare Artificial Tears. Defendants themselves failed to properly test and adequately warn and instruct Plaintiff as to the risks and benefits of the EzriCare Artificial Tears, given her need for this information, thus breaching the duty owed by Defendants to Plaintiff.

74. Defendants knew that the risk of exposure to *Pseudomonas Aeruginosa* bacteria from use of its product was not readily recognizable to an ordinary consumer and that consumers would not inspect the product for bacteria.

75. Defendants did not adequately test and/or give adequate warnings to Plaintiff that the EzriCare Artificial Tears were or could be contaminated with the

*Pseudomonas Aeruginosa* bacteria, or about the dangers of the presence of *Pseudomonas Aeruginosa* bacteria in their artificial tear products.

76. Plaintiff was justified in her reliance on Defendants' manufacturing, labeling, packaging, marketing, and advertising of the product for use as artificial tears.

77. Had Plaintiff received notice or a warning that the EzriCare Artificial Tears were or could be contaminated with the *Pseudomonas Aeruginosa* bacteria, she would not have used it and would not have suffered eye/vision/sinus damage that is permanent.

78. Defendants' EzriCare Artificial Tears product failed to contain adequate warnings and/or instructions regarding the presence of and dangers of the Pseudomonas Aeruginosa bacteria with the use of the EzriCare Artificial Tears.

79. As a direct and proximate result of the defendant's failure to warn of the defect or defects (i.e., the *preventable*—or, at the very least, detectable before sale—contamination with the *Pseudomonas Aeruginosa* bacteria) made EzriCare Artificial Tears unreasonably dangerous to persons, such as Plaintiff, who could reasonably be expected to use such product. As a result, the defect or defects were a producing cause of plaintiff's injuries and damages.

80. As a direct and proximate result of defendants' failure to warn, design, manufacture, packaging, labeling, marketing, sale, and distribution of EzriCare Artificial Tears, plaintiff was injured catastrophically and was caused severe pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and economic damages for which defendants are strictly liable.

**WHEREFORE,** Plaintiff respectfully requests this Court to enter judgment in plaintiff's favor against the defendants, jointly, severally, or in the alternative, for compensatory damages, together with interest, costs herein incurred, attorneys' fees, and all such other and further relief as this Court deems just and proper.

**COUNT THREE**
**Fraud**
**(Against All Defendants)**

81. Plaintiff incorporated by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

82. Defendants engaged in the development, manufacture, design, packaging, labeling, marketing, sale, and distribution of certain products including EzriCare Artificial Tears, owed a duty to provide accurate and complete information regarding said products.

83. Defendants fraudulently misrepresented the use of EzriCare Artificial Tears as "safe" and "sterile".

84. Defendants knew that these misrepresentations and omissions were material, false, incomplete, misleading, deceptive, and deceitful when they were made. Alternatively, Defendants concealed information and made the representations with such reckless disregard for the truth that knowledge of the falsity can be imputed to them.

85. Defendants made the misrepresentations and omissions for the purpose of deceiving and defrauding consumers, including Plaintiff, with the intention of having them act and rely on such misrepresentations and/or omissions.

86. Plaintiff relied, with reasonable justification, on the misrepresentations by Defendants, which induced her to purchase and use EzriCare Artificial Tears to her detriment.

87. Defendants profited significantly from their unethical and illegal conduct that fraudulently induced Plaintiff, and other consumers, to purchase and use a dangerous and defective product.

88. Defendants' actions, and Plaintiff's justifiable reliance thereon, were substantial contributing factors in causing injury and incurrence of substantial damages.

89. As a proximate result of Defendants' fraud, Plaintiff was injured catastrophically and was caused severe pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and economic damages.

**WHEREFORE**, Plaintiff respectfully requests this Court to enter judgment in Plaintiff's favor against the defendants, jointly, severally, or in the alternative, for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and all such other and further relief as this Court deems just and proper.

## COUNT FOUR
## Fraudulent Concealment
## (Against All Defendants)

90. Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

91. Defendants owed consumers, including Plaintiff, a duty to disclose all material facts regarding EzriCare Artificial Tears fully and accurately, not to conceal

material defects related thereto, not to place this defective product into the stream of commerce, and to fully and accurately label product packaging. To the contrary, Defendants explicitly and/or implicitly represented that EzriCare Artificial Tears were safe and sterile.

92. Defendants actively and intentionally concealed and/or suppressed material facts, in whole or in part, to induce Plaintiff to purchase and use EzriCare Artificial Tears. Defendants did so at her expense. Specifically, Defendants knew or should have known through the exercise of reasonable diligence, that the use of EzriCare Artificial Tears were not safe and sterile, that no preservatives were used and may expose a consumer to *Pseudomonas Aeruginosa* bacteria.

93. Defendants know or should have known that use of EzriCare Artificial Tears may expose a consumer to *Pseudomonas Aeruginosa* bacteria.

94. Defendants made the misrepresentations and omissions for the purpose of deceiving and defrauding Plaintiff, and with the intention of having her act and rely on such misrepresentations and/or omissions.

95. Defendants knew that their concealments, misrepresentations, and omissions were material, false, incomplete, misleading, deceptive, and deceitful when they were made. Alternatively, Defendants concealed information and made the representations with such reckless disregard for the truth that knowledge of the falsity can be imputed.

96. Defendants profited significantly from their unethical and illegal conduct that caused Plaintiff to purchase and use a dangerous and defective (i.e., contaminated) product.

97. Defendants' actions and representations, and Plaintiff's justifiable reliance thereon, were substantial contributing factors in causing injury and incurrence of substantial damages.

98. As a proximate result of Defendants' fraudulent concealment and conduct, Plaintiff was injured catastrophically and was caused severe pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and economic damages.

**WHEREFORE**, Plaintiff respectfully requests this Court to enter judgment in Plaintiff's favor against the Defendants, jointly, severally, or in the alternative, for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and all such other and further relief as this Court deems just and proper.

**COUNT FIVE**
**Breach of Express Warranty**
**(Against All Defendants)**

99. Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

100. As detailed above, Defendants, through its advertising, marketing, packaging, and labeling, expressly warranted that the EzriCare Artificial Tears were safe and fit for the purposes intended, that they were of merchantable quality, and that they did not pose dangerous health risks.

101. Moreover, the labeling for the EzriCare Artificial Tears represents that the use of these artificial tears serves to protect the eye from dryness and/or irritation, and that these artificial tears are safe for use in the eye. Such statements constitute

an affirmation of fact, or promise, or a description of the product as being safe and not posing a dangerous health risk.

102. Defendants breached this express warranty because the EzriCare Artificial Tears are not safe. To the contrary, these artificial tears pose a serious and dangerous health risk because they could be and were contaminated with the *Pseudomonas Aeruginosa* bacteria—a dangerous and deadly bacterium.

103. Plaintiff read and relied on these express warranties provided by Defendants in the labeling, packaging, and advertisements.

104. Defendants breached their express warranties because the artificial tears at issue are adulterated/contaminated and not reasonably safe for their intended use.

105. Defendants knew or should have known that the EzriCare Artificial Tears did not conform to their express warranties and representations and that, in fact, they are not safe and pose serious health risks because they are contaminated with a dangerous and deadly bacterium.

106. Defendants' representations were made to induce Plaintiff to purchase the artificial tears at issue and were material factors in Plaintiff's decision to purchase the product.

107. As a proximate result of Defendants' design, manufacture, marketing, sale and distribution of EzriCare Artificial Tears, Plaintiff was injured catastrophically and was caused severe pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and economic damages.

**WHEREFORE**, Plaintiff respectfully requests this Court to enter judgment in Plaintiff's favor against the Defendants, jointly, severally, or in the alternative, for

compensatory damages, together with interest, costs herein incurred, attorneys' fees and all such other and further relief as this Court deems just and proper.

**COUNT SIX**
**Breach of Implied Warranty**
**(Against All Defendants)**

108. Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

109. Because the EzriCare Artificial Tears are contaminated with the *Pseudomonas Aeruginosa* bacteria, they are not of the same quality as those generally acceptable in the trade and were not fit for the ordinary purposes for which such artificial tears are used.

110. Plaintiff purchased the EzriCare Artificial Tears in reliance upon Defendants' skill and judgment and the implied warranties of fitness for the purpose.

111. The EzriCare Artificial Tears were not altered by Plaintiff.

112. Plaintiff was a foreseeable user of the EzriCare Artificial Tears.

113. Plaintiff used the EzriCare Artificial Tears in the manner intended.

114. Defendants' artificial tears were not adequately labeled and did not disclose that they were or could be contaminated with *Pseudomonas Aeruginosa* bacteria.

115. EzriCare Artificial Tears did not measure up to the promises or facts stated in the marketing, packaging, labeling, advertisement, and communications by and from Defendants.

116. Defendants impliedly warranted that the EzriCare Artificial Tears were merchantable, fit, and safe for ordinary use, and not otherwise adulterated or injurious to health.

117. Defendants further impliedly warranted that the EzriCare Artificial Tears were fit for the particular purposes for which they were intended and sold.

118. Contrary to these implied warranties, Defendants' artificial tears were defective, unmerchantable, and unfit for their ordinary use when sold and unfit for the particular purpose for which they were sold, and they re-breached the implied warranty of fitness.

119. As a proximate result of Defendants' design, manufacture, marketing, sale and distribution of EzriCare Artificial Tears, Plaintiff was injured catastrophically and was caused severe pain, suffering, disability impairment, loss of enjoyment of life, loss of care, comfort, and economic damages.

**WHEREFORE,** Plaintiff respectfully requests this Court to enter judgment in Plaintiff's favor against the Defendants, jointly, severally, or in the alternative, for compensatory damages, together with interest, costs herein incurred, attorneys' fees and all such other and further relief as this Court deems just and proper.

## COUNT SEVEN
### Negligent Failure to Timely Recall
### (Against All Defendants)

120. Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

121. At all relevant times, Defendants designed, developed, managed, operated, inspected, marketed, advertised, promoted, disseminated, made publicly available, and/or benefited from the EzriCare Artificial Tears, such as Plaintiff.

122. Defendants knew or should have known through the exercise of reasonable care, the risks to consumers posed by EzriCare Artificial Tears.

123. Defendants knew or, by the exercise of reasonable care, should have known use of EzriCare Artificial Tears was harmful and had the potential to increase the risks, vision loss and/or significant damage to the eye, which renders it unreasonably dangerous when used in the manner it was intended, and to an extent beyond what would be contemplated by the ordinary consumer.

124. Defendants also owed a continuing duty to Plaintiff to remove, recall, or retrofit unsafe and defective products, such as EzriCare Artificial Tears, across the United States (including in Plaintiff's state).

125. Defendants knew or reasonably should have known that EzriCare Artificial Tears were dangerous and not safe for use.

126. Defendants knew or, in the exercise of reasonable and ordinary care, should have known that EzriCare Artificial Tears were defective and unsafe for Plaintiff, who is a person likely to use EzriCare Artificial Tears for the purpose, and in the manner for which it was intended to be used and for purposes reasonably foreseeable to Defendants.

127. At all times, Defendants negligently breached said duties and unreasonably and negligently allowed EzriCare Artificial Tears to be used by Plaintiff without proper recall, retrofit, or warning.

128. Defendants failed to properly and timely remove, retrofit, or warn of the serious safety risk posed by EzriCare Artificial Tears to consumers.

129. In failing to properly and timely recall, retrofit, or warn of the serious safety risks the Products pose to consumers and the public, Defendants have failed to act as a reasonable manufacturer, designer, or distributer would under the same or similar circumstances and failed to exercise reasonable care.

130. As a proximate result of Defendants' design, manufacture, marketing, sale, and distribution of EzriCare Artificial Tears, Plaintiff was injured catastrophically and was caused severe pain, suffering, disability impairment, loss of enjoyment of life, loss of care comfort and economic damages.

**WHEREFORE**, Plaintiff respectfully requests this Court to enter judgment in Plaintiff's favor against the Defendants jointly, severally, or in the alternative, for compensatory damages, together with interest, costs herein incurred, attorneys' fees and all such other and further relief as this Court deems just and proper.

## COUNT EIGHT
**Violation of New Jersey's Consumer Fraud Act (N.J. Stat. § 56:8-2 et seq.)**
**(Against Defendants EzriCare LLC and EzriRx LLC)**

131. Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

132. New Jersey's Consumers Fraud Act ("NJCFA") section 56:8-2 states:

The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentations, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person

has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

133. Defendants violated the NJCFA by misrepresenting the sterile, uncontaminated, and safe nature of EzriCare Artificial Tears; that is, EzriCare Artificial Tears are not sterile, are contaminated with a dangerous and drug-resistant bacterium and are not safe.

134. In the course of business, Defendants made affirmative misrepresentations that conveyed to Plaintiff and the general public that EzriCare Artificial Tears were safe and suitable as a treatment for the symptoms related to dry eyes. Defendants, however, concealed and suppressed material facts concerning EzriCare Artificial Tears, including that the Product is unsafe and contaminated with a dangerous and drug-resistance bacterium that can lead to/cause permanent damage to the eye/vision/sinus cavity.

135. Plaintiff had no way of discerning that Defendants' representations were false and misleading because the labeling did not disclose the presence of *Pseudomonas Aeruginosa* bacteria, the violation of C.G.M.P. by Defendants, and Plaintiff had no reason to otherwise suspect that EzriCare Artificial Tears were contaminated.

136. Defendants thus violated New Jersey law by making statements, when considered as a whole from the perspective of the reasonable consumer that conveyed that EzriCare Artificial Tears were safe and suitable as a treatment for the symptoms related to dry eyes.

137. Defendants made affirmative misrepresentations about the safety and quality of the EzriCare Artificial Tears that were not true, and they failed to disclose

material facts regarding the design, manufacture, testing, packaging, and labeling of the EzriCare Artificial Tears, which mislead Plaintiff.

138. Defendants knew or should have known that their conduct violated New Jersey law.

139. Defendant owed Plaintiff a duty to disclose the true and unsafe nature of EzriCare Artificial Tears.

140. Defendants' misrepresentation of the true characteristics of EzriCare Artificial Tears (i.e., that the Product is or could be contaminated) was material to Plaintiff.

141. Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the true, unsafe nature of EzriCare Artificial Tears.

142. Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the true, unsafe nature of EzriCare Artificial Tears.

143. Plaintiff would not have purchased EzriCare Artificial Tears had she known that the Product was contaminated with a dangerous and deadly bacterium.

144. Defendants' violations present a continuing risk to Plaintiff as well as to the general public, including public health. Thus, Defendants' unlawful acts and practices complained of herein affect the public interest.

145. Plaintiff suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and failure to disclose material information. Defendants have an ongoing duty to all customers and the public to refrain from unfair and deceptive practices under New Jersey law. Plaintiff suffered

ascertainable loss because of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

146. Through its deceptive practices, Defendants have improperly obtained and retained money from Plaintiff.

147. The injury caused by Defendants' conduct is not outweighed by any countervailing benefits to consumers, including Plaintiff, or to competition.

148. The injury caused by Defendants' conduct could not reasonably have been avoided by Plaintiff because she did not know and could not have known that the Product was contaminated with the Pseudomonas *Aeruginosa* bacteria.

149. As a proximate result of same, Plaintiff was injured catastrophically and was caused severe pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and economic damages.

**WHEREFORE**, Plaintiff respectfully requests this Court to enter judgment in Plaintiff's favor against the Defendants, jointly, severally, or in the alternative, for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and all such other and further relief as this Court deems just and proper.

## COUNT NINE
### Punitive Damages
### (Against All Defendants)

150. Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though more fully set forth herein.

151. The Defendants have acted willfully, wantonly, and/or recklessly in one of more of the following ways:

a. By designing and manufacturing a "preservative-free" product in a "multi-use" bottle, Defendants knew of the risk of exposure to bacteria—specifically, the *Pseudomonas Aeruginosa* bacteria—by the EzriCare Artificial Tears before designing, manufacturing, packaging, labeling, making, distributing, and/or selling it, yet purposefully proceeded with such action;

b. Despite their knowledge of the risk of exposure to the *Pseudomonas Aeruginosa* bacteria within the EzriCare Artificial Tears, Defendants affirmatively minimized this risk through the violation of C.G.M.P., like failing to perform proper microbial testing, among other things; and

c. Through their actions outlined above, Defendants exhibited a reckless indifference to the safety of users of EzriCare Artificial Tears including Plaintiff as described herein, knowing the dangers and risks of the EzriCare Artificial Tears yet concealing and/or omitting this information. The concerted action was outrageous due to Defendants' reckless indifference to the safety of users of the EzriCare Artificial Tears, including Plaintiff.

152. As a direct and proximate result of the willful, wanton, and/or reckless conduct of the Defendants, Plaintiff has sustained damages as set forth above.

153. All of the Defendants have been or should have been aware that their products were contaminated with *Pseudomonas Aeruginosa* bacteria through proper testing. Despite this, all of the Defendants have failed to inform their consumers of this known hazard. As such, all Defendants should be liable for punitive damages to Plaintiff.

**WHEREFORE,** Plaintiff respectfully requests this Court to enter judgment in Plaintiff's favor against the Defendants, jointly, severally, or in the alternative, for

compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and all such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable and against all Defendants.

## DEMAND FOR RELIEF

**WHEREFORE,** Plaintiff demands judgment against Defendants, jointly, severally, or in the alternative, as to each and every count, including:

A. Awarding compensatory damages, including but not limited to pain, suffering, emotional distress, loss of enjoyment of life, and other noneconomic damages in an amount to be determined at trial of this action.

B. Awarding economic damages in the form of medical expenses, out of pocket expenses, lost earnings, and other economic damages, in an amount to be determined at trial of this action;

C. Punitive and/or exemplary damages for wanton, willful, fraudulent, and/or reckless acts of the Defendants who demonstrated a complete disregard and reckless

indifference for the safety and welfare of the general public and Plaintiff in an amount sufficient to punish Defendants and deter future similar conduct.

D. Prejudgment interest;

E. Post judgment interest;

F. Awarding Plaintiff's reasonable attorneys' fees;

G. Awarding Plaintiff, the costs of these proceedings; and

H. Such other and further relief as this Court deems just and proper.

DATED: February 26, 2024

Thomas J. DiChiara, Esquire
DRAZIN AND WARSHAW, P.C.
25 Reckless Place
Red Bank, NJ 07701
Phone: 732-747-3730
Attorneys for Plaintiff Tracy Day
tjdichiara@drazinandwarshaw.com